Case number 20-7078. Agudas Chasidei Chabad of United States versus Russian Federation et al. State Development Corporation, VEB.RF, formerly known as Gneshe Ekonom Bank Appellant. Mr. Lipschitz for the appellant, Mr. Lieberman for the appellees. I just need one moment to get my file. Hold on for just one second. Yeah. Thank you. Mr. Lipschitz, please be ready. Good morning, and may it please the court. David Lipschitz for VEB, and I'd like to reserve five minutes for rebuttal. Within the meaning of the FSIA, VEB is an independent instrumentality of the Russian Federation entitled to sovereign immunity. Every court that has considered this question has held so. The district court below ignored its obligation to adjudicate VEB sovereign immunity. Instead, it authorized a subpoena directed to VEB, apparently based on the finding of jurisdiction over the Russian Federation itself. In so doing, the district court erred in two ways. First, the district court failed to consider VEB's immunity, which requires immediate correction. This court's precedent is clear that VEB is entitled to have its immunity determined before it is forced to partake in U.S. litigation. Partake in litigation is a rather broad term. Is there a, you're asked the question by the opposing brief, is there really a third immunity, or do immunities only exist as to being a defendant in litigation or being attached as opposed to simply being subpoenaed, as it were, or ordered as a witness? Your Honor, section 16.04 provides immunity from the process of the district court. It does not draw a distinction between discovery- What are the words that you're using there? Read it from the statute if you have it. Of course. Subject to existing international agreements to which the United States is a party at the time of enactment of this act, a foreign state shall be immune from the jurisdiction of the courts of the United States and of the states except as provided in section 16.05. This court has held that in order to issue a subpoena, the district court must have jurisdiction over the matter. It did not have jurisdiction over VEB here. That is the Houston Business Journal case, Your Honor. Moreover, I would also point you to the Second Circuit decision in Peninsula and in Vera. And in Peninsula, the case was very much focused on third-party discovery from an agency and instrumentality of the Korean government. Let me ask you, counsel, when your client filed a supplemental brief to its motion to quash, it raised an immunity defense, did it not? It raised the immunity defense of the Russian Federation. Yes, Your Honor. And so at the point, I'm just trying to understand. So VEB never raised its own immunity? That's what I'm trying to clarify here. No, that's not true, Your Honor. VEB- Well, where did it raise it? Sure, at JA-25, VEB preserved its immunity and- Yes, it says not waiving any immunity or other defenses. And that's it. But as Your Honor- That's not the same as raising an issue. That's true, Your Honor. But as Your Honor held in Houston Business Journal, a district court must satisfy itself as to its own jurisdiction. The district court did not do so here. We thought that adjudication through the 1292 motion that we did file very expressly raising VEB's immunity and the district court- But you just told me it didn't. Well, in 1292, Your Honor, our motion in 1292 filed in January of 2020, we specifically asserted that the district court lacked jurisdiction and over VEB, lacked subject matter jurisdiction over VEB and asked the district court to review that finding. And certify that finding for appeal. The district court ignored that argument. It's not that it decided it against us. There is no decision on VEB's immunity argument at all. So that- Excuse me, go ahead. Go ahead, no, please. If, thank you, if on the 1292B, the district court didn't certify it for interlocutory review. That's right, Your Honor. If it doesn't certify it for interlocutory review, how do we have jurisdiction under 1292B? Because that's a necessary ingredient to our jurisdiction. Of course, Your Honor. So I think this is an answer in three parts. First of all, this court always has subject matter, always has jurisdiction to review a district court's lack of subject matter jurisdiction. Second of all, in Briggs, Your Honor, this court established a framework. And it's a little bit confusing because the Briggs majority opinion on this issue is in the dissent. But if you look at it, in that case, this court explained that a remediate review of a 1292 denial maybe is appropriate in a small class of cases where the district court's decision effectively abrogates a litigant's immunity from having to participate in the legal process. In fact, Briggs uses that as an example, stating that a decision which has the effect of abrogating immunity, which protects a person from a trial under action, as much as from an outcome on trial, is precisely the type of case where immediate review would be appropriate. And if you look at this court's decision in Pompandreou, where it finds that sovereign immunity is precisely the type of immunity from trial and the attendant's burdens of litigation, and not just a defense to liability on the merits. And going back to Judge Santel's question earlier, Pompandreou is precisely a case that dealt with discovery rather than the merits, as I mentioned earlier, the Peninsula case in the Second Circuit. And finally, Your Honor, if you were in- If Briggs, there's some confusing things going on in Briggs because of the variation of the panelists and the different issues that different people addressed and the possibility of collateral order review. But apart from that, I'm not understanding how under the terms of the statute, we have jurisdiction when the district court just didn't certify under 1292B. That just seems to be under the terms of the statute, a necessary predicate to our jurisdiction to review the interlocutory order via that route. There might be other routes to review something, but under 1292B, the terms of the statute require certification by the district court. That's right, Your Honor. We're not arguing for a review of the district court's discretion. We're arguing that that order, which ignored VEB's immunity argument in toto, effectively abrogates VEB's immunity as an instrumentality of the federation within the FSIA. And under this court's precedent in PNID, Briggs, and Pompandreou, excuse me, that should suffice to provide jurisdiction. So could you have taken a collateral order appeal of the previous order? I'm sorry, Your Honor, may I ask? Could you have taken a collateral order appeal of the previous order? Yeah, Your Honor, admittedly, the area, the question was unclear when we were looking at it. Generally, discovery orders are not subject to collateral order review. It was only six months after we filed or four months, I guess, after we filed our 1292 order that this court decided PNID. And in PNID, it made clear for the first time that any order that effectively abrogates immunity is subject to collateral order review. That, of course, was a scheduling order. And we submitted a notice of supplemental authority on that point to the district court. Again, there was no answer. And following all of that, Your Honor, if you feel uncomfortable with simply reviewing the 1292 order, there is the avenue of mandamus, which we submit is satisfied here. There is no dispute that- It's hard to grant mandamus in a situation in which there was another route. And if the other route was a collateral order appeal of the December order, then mandamus would seemingly be off the table because that's one of the predicates to mandamus. Well, Your Honor, we did seek review of the December order. We thought it through 1292. At that time, there was no clear avenue that allowed- Did you file an appeal of it or an attempt to appeal of it? I'm sorry, Your Honor, one more time. Did you file in this court for review of that 1292 order? Yes, we did. We filed in this court timely notice of appeal of the July order, of the 1292 order. And to go back- Not the December order, but not- Not the January. Sorry, we did not- Yes, I apologize for the confusion. Yes, we did not seek immediate review of the December order in this court. We did not think we had the ability to do so because at the time it was a discovery order and it was not clear. So we believe 1292 required us to ask, sorry, rather, we believe that at that moment we needed to seek certification. This court subsequently issued P&ID which identified an alternative route which is the route that we saw. But if you put us back in the position that we were in in December, Your Honors, that wasn't clear. It certainly wasn't obvious. And so we did what we thought we needed to do to preserve the, to assert our rights and to challenge the district court's jurisdiction. But we were not sitting on our hands. We took every opportunity available to us along the process. And the fact remains that today before this court, there was no- You didn't take every opportunity available to you because you, and I'm not saying you necessarily, I'm not attributing anything to this. It's just that you had another opportunity available to you. And at the time you didn't believe that it was, but it turns out, even you seem to concede that it, it turns out that it was available to you at the time. I would submit, Your Honor, that P&ID was a significant shift at the time that it happened when you, for the first time, ruled in the context of an order that is not typically available. I would also note that this is an area of law which differs from some others. In Pampandreou and McKesson, discourse endorsed and sovereigns routinely make seriatim motions before asserting immunity. So if the issue was that we needed to make a second motion to quash, we will gladly do that. We are not asking for anything more than having our immunity adjudicated by someone. We believe this court has the authority to do so on the record before it. It is, after all, a question of law. Is there a time limit on filing a second motion to quash now? I am not aware of one. Again, this is an area which has not come up before. So if the answer is that we go down below and we make a second motion to quash, that would be perfectly appropriate. We're concerned about the fact that if we do so, we would run into issues of sanctions. And this court has already identified that it would be inappropriate to sanction an agency or an instrumentality of a sovereign without immunity being first adjudicated. Okay. And you wanted to reserve some time for rebuttal, but let me make sure- You have five minutes. Let me make sure my colleagues don't have additional questions for you at this time. Okay. I'm sorry, Justin Tell, do you have a question? Is it really fixed that your immunity is not derivative from the Russian sovereign? You understand what I'm saying? They have waived. If the Russian sovereign has waived or has been held to have waived, and I understand maybe some dispute about whether Chabudat won was correct, but do you have an independent immunity if the sovereign from whom you derive your status has lost its immunity? Yes, Your Honor. In order to exercise jurisdiction over us on the basis that Russia has lost its immunity, which is exactly what Chabudat asked this court to do at 32, would require this court to ignore four decades of precedent from the Supreme Court and from this court. The precedent of Bonkak, Mckesson, and other cases that we cite in our papers makes clear that our immunity has to be adjudicated on its own basis. It's not, quote unquote, derivative- It's not only the immunity in question before, but the litigation in question. That is to say, again, you're not a party to litigation. This is a discovery process where that matter has come before us in spite of the immunity of the sovereign. Why didn't that take your immunity with it? You're not the Russian government. Of course, Your Honor, but just like the fact that the Second Circuit held that it had immunity over Argentina in the EM case, did not give a jurisdiction over the Argentinian Central Bank, or in Walter Fuller Aircraft, the fact that there was a jurisdiction over the Republic of the Philippines did not give a jurisdiction over the commission, the jurisdiction over VEB has to be adjudicated as with respect to VEB, not the Federation itself. They're independent entities within the meaning of the Supreme Court's Bonkak decision. And we're not aware of any case anywhere in the United States that would endorse abrogating immunity of an instrumentality within the meaning of the FSIA because the immunity of the sovereign has been deemed to be pierced in any context, including the jurisdictional context. Sorry, including in the discovery context. That's all. Thank you, Mr. Lipschitz. We'll give you a little time for rebuttal. Mr. Lieberman, we'll hear from you now. May it please the court. The first question is, as each of your honors questions make clear is whether this court has jurisdiction to entertain the issues that VEB purports to raise on appeal. VEB could have filed an immediate appeal within 30 days from Judge Lambert's order denying the motion to quash. It shows not to do that. In response to the panel's questions, Mr. Lipschitz argued for the first time, it wasn't in his opening brief, it wasn't in his reply brief, that the reason that they did not file the notice of appeal is because they had some question as to whether or not an appeal at that point would have been appropriate. I think Mr. Lipschitz post hoc argument about that is inconsistent with his argument that for decades it has been known that the Foreign Sovereign Immunity Act provides immunity against discovery for third parties. So I don't know how he's gonna balance those two, but in any event, motion to quash, no timely notice of appeal, there's no jurisdiction to hear the issues on the motion to quash. On 1292B, this court and other courts have been very clear. Can I just ask you before we go to 1292B on the motion to quash, what if there's a subsequent motion to, can there be a subsequent motion to quash? I think if there is a subsequent event which gives rise to new issues, they could file a motion to quash. And then at that time, would that be reviewable under the collateral order doctrine? Depending upon the nature of the dispute and the order, yes, I think it would be. But they couldn't just file another motion to quash now, they'd have to wait for something else to happen. Otherwise the jurisdiction requirement of a notice of appeal within 30 days would be meaningless. Well, I mean, the district court would have to issue an order. Yeah, yes. But if they just filed a motion to quash saying, based on what's happened in the past, we're filing another motion to quash, that would not give rise to the right to bring a new appeal. But if something else happened in discovery, it was new and distinct, certainly they could file a motion. As to 1292B, as Your Honor correctly pointed out, the statute makes very clear that there is no jurisdiction for the court of appeals to entertain a 1292B appeal unless the district court judge certifies the issues for appeal, which Judge Lambert declined to do. Therefore 1292B does not get you up. With respect to mandamus, again, as Your Honor's question makes clear, because there was an alternative route, mandamus is not available. And if there was any doubt about that question, this court dealt with that issue recently in the Lee Hospital case. In the Lee Hospital case, this court specifically said that because the appellants in that case could seek the relief they desire under Rule 60B-4, they cannot obtain mandamus relief. The appellant- Back on the question of the 1292B denial not being appealable, it makes a great deal of sense. But the question I have is, if you have an immunity case and forget about the instrumentality, so suppose you have a very clear sovereign immunity case in which the sovereign has the right to be immune, not just from judgment, but from litigation, and they make the motion and then they're denied that appealability under 1292, is there no way that the sovereign can then get review of the immunity that's being denied? Well, I think a 1291 appeal would be appropriate in those circumstances, Your Honor. And of course, here we have a very different factual situation. First, VEB chose, for whatever reason, not to raise the issue of their own purported immunity in their motion to quash, as Mr. Lipschitz's answers to Judge Rogers' questions were very clear. Not only that, they made- Why does that matter for jurisdictional purposes? Because even if they didn't raise it, yeah. I think you acknowledge that they could have taken a 1291 appeal of the order, denying the motion to quash. Yes, that's absolutely true. The fact that they didn't raise it doesn't matter because if they would have taken an appeal at that point under 1291, then we would have been obligated to address the jurisdictional issue. Is that not right? You would, although under the applicable standard of review, reviewing an appeal from a motion to quash, you might take into account what arguments they made and did not make below and what factual assertions they made. So for example, below, they made factual assertions that were inconsistent with their argument now that they're an instrumentality. If you look at the joint appendix at pages 30 to 32, they said that VEB is not owned or controlled by the Federation Defense. It functions independently. And this is a direct quote from what VEB filed. VEB, quote, is further removed from being an instrumentality of the Russian state than Ex-Im Bank is with respect to the US government. So their argument to the district court was actually contrary to their argument now that they're an instrumentality. So your honor is right. You certainly could consider the issue of immunity, but you would consider it through the lens of the appropriate standard of review in light of the arguments and facts who were presented to the district court. Can I ask a follow-on to Judge Santel's question, which is your answer is you can't take an appeal from 1292B, but you could have taken a 1291 appeal from the original order. And am I understanding it correctly that what happened here is there's an original order in December, and then there's a 1292B motion to certify that order for interlocutory appeal? Well, I've read the notice of appeal, which is at the joint appendix at 502.505 a whole bunch of times. I can't quite figure out what they're appealing. But the 1292B certification was in the district court, not before us. The motion for 1292B certification in the district court was to certify the December order for interlocutory appeal. Either that or to certify the denial of the 1292B motion itself. It's not really clear from the notice of appeal, but in either event, as a 1292B motion, the district court has to certify, otherwise this court doesn't have jurisdiction to entertain the 1292B appeal. So there are three routes up I would submit. 1291, which is blocked because they didn't file within 30 days. 1292B, which is blocked because the district court didn't certify. And mandamus, because as your honor pointed out, there were other routes available like 1291, which they chose not to. Okay. Let's see if my colleagues have further questions for you. Nothing. Mr. Lieberman. Right, in that case, I have nothing further. Thank you, counsel. Mr. Lipschitz, we'll give you three minutes. I think we used up most of your time, but we'll give you three minutes back for rebuttal. Thank you, your honor. Four quick points. First of all, sovereign immunity has never been held to be a use it or lose it device, which is what Mr. Lieberman is suggesting. When he says that something new would have to come up, what he's effectively saying is, VEB has been ordered to comply with the subpoena. There would have to be a new order that would be appealable. That new order would be in order for sanctions. VEB would have to accept that it would be sanctioned in order and held in contempt in order to exercise its sovereign immunity. Pomp and Drill squarely rejects that outcome. And the Kellogg mandamus case rejects similarly that outcome in the context of privileged documents. That's point one. Point two, our appeal of the July order is a 1291 appeal of the abrogation of our sovereign immunity that was clearly done. There is no authority and no case law anywhere in the United States, and Mr. Lieberman has identified none that would permit a sovereign who has asserted immunity to have that question not be determined and have to comply and partake in the litigation. And it is all the more odorous here because, odious here, because it is a third party subpoena. So it's not even a case of where Mr. Lieberman suggests that we did anything wrong. It is a case where we're being sucked into a process to which we are not a party and ordered to bear that burden. Finally, sorry, your honors, point three on the question about owned and controlled and the representations to the district court. From the second paragraph of the preliminary statement, VB argued that it was a duly created instrumentality of a foreign state. This is a JA-24. The point that was made where Mr. Lieberman is reading is that just because we're an instrumentality does not mean that we are an alter ego. This court's finding in Transamerica makes the point very clear. An alter ego finding, it requires of showing that control that substantially exceeds the normal supervisory control. That is this court's finding in Transamerica and in McKesson. And finally, your honor, point number four, there is no question of immunity. There is no question of an applicable exception to immunity because Mr. Lieberman never once identified an exception. So here you would have a district court acting against VB without jurisdiction. This court's jurisprudence prohibits that in Houston Business Journal and in Pampandreou. There's no authority for that outcome. And finally, if I may, just one final point, your honors. In the briefing, there was lots of attention focused on NML and why NML would potentially permit Mr. Lieberman's subpoena that for two reasons does not work. One is in NML, the subpoena targets were not themselves asserting immunity. And two, NML is a 1609 case. We are asserting immunity under 1604. It's entirely different, your honors. Okay. Thank you, Mr. Lushas. Thank you, Mr. Lieberman. We'll take this case under submission.
judges: Srinivasan, Rogers, Sentelle